LINDEKE et al. v. CONVERSE.

(Circuit Court of Appeals, Eighth Circuit. August 26, 1912.)

No. 122.

*(Syllabus by the Court.)*

1. BANKRUPTCY (§ 443*)—REVISION OF PROCEEDINGS—NATURE AND SCOPE OF REMEDY.

A denial of a motion to dismiss an application of a bankrupt for a discharge on undisputed facts presents a question of law reviewable by a petition to revise under section 24b of the Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 917; Dec. Dig. § 443.*]

2. BANKRUPTCY (§ 443*)—REVISION OF PROCEEDINGS—DISCRETIONARY ORDERS.

Such a denial is discretionary with the bankruptcy court, but only in the same sense in which final orders and decrees in equity are so.

Substantial errors in the interpretation or application of the principles and rules of equity jurisprudence governing the matter may be reviewed and corrected.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 917; Dec. Dig. § 443.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BANKRUPTCY (§ 410*)—DISCHARGE OF BANKRUPT—APPLICATION—LACHES.

Conscience, good faith, and reasonable diligence are requisite to call a court of equity into activity in one's behalf.

The debtor was adjudged a bankrupt on January 4, 1906. In June, 1906, she signed an application for her discharge and left it with her attorney. He did not file it until April 26, 1907, when he procured a permissive order of the bankruptcy court on an affidavit which failed to show that he or the bankrupt had been unavoidably prevented from filing it within the year. Between April 26, 1907, and September 12, 1911, neither the bankrupt nor her attorney took any action to bring the application to a hearing. On the latter day they procured an order for a hearing on October 16, 1911, which was met by creditors by a motion to dismiss the application for the discharge for want of prosecution.

*Held*, the motion should have been granted. The bankrupt failed to exercise that reasonable diligence requisite to call a court of equity into action on her behalf.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 694; Dec. Dig. § 410.*]

Petition to Revise Order of the District Court of the United States for the District of Minnesota.

Petition by Albert H. Lindeke and others, as Lindeke, Warner & Sons, to revise an order denying their motion to dismiss for want of prosecution the application of Julia D. Converse, bankrupt, for discharge. Petition granted, with directions to grant the motion to dismiss.

E. Howard Morphy, Frank H. Ewing, and John M. Bradford, for petitioners.

F. H. Peterson and Edwin Adams, for respondent.

Before SANBORN and HOOK, Circuit Judges, and SMITH McPHERSON, District Judge.

SANBORN, Circuit Judge. The question in this case is whether or not the facts presented to the court below on a motion of creditors of the bankrupt to dismiss her application for a discharge for want of prosecution presented lawful grounds for the grant of that motion. This question is raised by a petition to revise which is not challenged by demurrer or answer, and these are the material facts which it discloses: Julia D. Converse was adjudged a bankrupt on January 4, 1906. There was much litigation between her and her creditors until May 21, 1906, when the District Court denied an application to punish her for contempt unless she should comply with an order of the referee to pay $5,500 to the trustee in bankruptcy. On June 5, 1906, she signed an application for a discharge and left it with her attorney. She stated in an affidavit made November 13, 1911, that she was not aware that anything further was to be done by her relative to the matter and did not know what action was taken, or was necessary to be taken until the year 1911. But during all this time a learned member of the bar was her attorney in this matter. He knew the law and the practice, and his knowledge in this regard was her knowledge. The bankrupt's application was not filed within the

year, nor until April 26, 1907. Then it was filed pursuant to a permissive order of the District Court made on that day, and the only basis for that order was an affidavit made by her attorney on April 26, 1907, to the effect that he had been the attorney of the bankrupt since June, 1906, that she made and left with him her petition for her discharge in that month, that her estate was not then ready to close up and he did not then present it, that he "was very busy during the fall of 1906 and was obliged to be away from home and his office much of the time up until the 1st of January, 1907, and since said date has been obliged to be away at St. Paul attending the session of the Legislature until the present time, and that it has not been the fault of said bankrupt that her petition for discharge was not filed before." This affidavit fails to show that the attorney was either absent or too busy to take the requisite time, perhaps 10 minutes, to mail this petition to the clerk of the court with directions to file it, during the months of June, July, and August, 1906. It fails to show that either the bankrupt or her attorney were "unavoidably prevented" from filing this application within the year. Act of July 1, 1898, 30 Stat. 544, c. 541, § 14a; U. S. Comp. Stat. p. 3427.

The application for the discharge was filed on April 26, 1907, and nothing was done by the bankrupt or her attorney to prosecute the application or to bring the matter to a hearing until September 12, 1911, when they caused an order to be made that a hearing should be had upon the application on October 16, 1911. On that day the creditors who have presented this petition made a motion to dismiss the application for the discharge for want of prosecution, upon an affidavit of their attorney that the application for the discharge should have been opposed if it had been brought to a hearing within a reasonable time, on the grounds that the bankrupt, who had been and was conducting a general store at Detroit, Minn., when she was adjudicated, had, with intent to conceal her true financial condition, failed to keep books of account or records from which her financial condition could be ascertained, that within four months preceding the filing of the petition in bankruptcy she had transferred and concealed some of her property with intent to defraud her creditors, and that she had refused to obey orders of the court and to answer material questions approved by the court, that it would be difficult now, and almost impossible, properly to resist her application because nearly six years had elapsed since the commission of the acts constituting the grounds of opposition, that the testimony of the bankrupt's clerks in November and December, 1905, of the officers and clerks at that time of two banks at Detroit, Minn., and of other witnesses, would be necessary, that if these witnesses could be procured the facts and circumstances which could have been shown within a reasonable time after the date of the petition for the discharge cannot now be distinctly remembered by the witnesses, that these witnesses and their testimony could have been procured in 1906, that material testimony has been lost by reason of the long delay in

bringing the petition to a hearing, and that he is informed and believes that the petition has not been brought on for a hearing for the purpose of postponing the latter until the evidence of the bankrupt's acts and doings, which could be properly set forth in specifications in opposition to the discharge, should be lost or forgotten and the witnesses should be scattered. In her affidavit in opposition to the motion the bankrupt stated that the reasons for opposition to her discharge suggested by the foregoing affidavit were unfounded in fact. She made no denial, however, that material evidence upon the issues suggested had been lost by the delay, nor did she make any denial that the purpose of the delay had been to cause the loss of this evidence, save that she stated that she did not know it was necessary for her to do more than to sign her petition—an ignorance that in view of the knowledge of her attorney can hardly avail.

[3] The facts which have been recited seem to cry aloud for a dismissal of the application for the discharge. Counsel for the bankrupt, however, present three arguments in support of the action of the court below. They say that the fifth rule of the District Court of Minnesota provides that in case of voluntary bankruptcy, unless there be special reasons for earlier action, no application of the bankrupt for his discharge will be granted until the referee shall have certified that the case is closed, and they state in their brief that so far as they have been informed the estate is not yet closed. But there is no allegation or proof that the estate has not been closed in the record in this case upon which this court must act. Moreover, the rule of the court below does not prohibit the hearing and denial or the decision to grant a petition for a discharge before the closure of the estate has been certified. Its only purpose evidently was to prevent the actual issue of a discharge in voluntary cases until the reasons for refusing it had presented themselves. The bankruptcy law, which must prevail here, requires a judge to hear the application "at such time as will give parties in interest a reasonable opportunity to be fully heard" (section 14b), and that time certainly is not, in ordinary cases, six years after the adjudication. The rule cited was no excuse for the long delay in the case at bar.

Counsel contend that the bankrupt did all she was required to do when she filed her petition, and that it was the fault of the clerk of the court that an earlier hearing thereon was not had. They base this position on the forms in bankruptcy prescribed for the application and for the order of notice for the hearing and a statement in Loveland on Bankruptcy that as soon as the petition is properly filed the court passes the order of notice. But the bankrupt was the actor in this proceeding for her discharge, and, in the absence of any refusal or delay of the court or judge to grant a proper application on her behalf for an order of notice of a hearing upon her application, she cannot escape the consequences of her laches. It is not the duty of judges or clerks to fix the times and places of hearings of controversies, petitions, or bills in equity

and to give notice thereof without the application or suggestion of any of the interested parties.

[1, 2] The third reason urged in support of the denial of the motion to dismiss the petition for the discharge is that the order denying that motion was discretionary with the court below, and hence is not reviewable here, save for a gross abuse of that discretion. Every order and decree of a court of equity rests in some degree in the discretion of the chancellor who makes it because every appeal to him for relief is addressed to his conscience. They do not rest, however, in his mere arbitrary or whimsical will, but in his sound judicial discretion, informed and guided by the established principles, rules, and practice of equity jurisprudence, and the question whether or not in the exercise of his discretion he has fallen into any error in the interpretation or application of these principles and rules is always a question of law reviewable in a proper case by an appellate tribunal. There is necessarily a wide difference in the degrees in which decrees and orders are intrusted to the discretion or judgment of the chancellor because there is a wide difference in the degrees by which they are governed by fixed principles and rules. Interlocutory administrative orders which determine methods of procedure and times and places of acts and hearings are more largely discretionary than final orders and decrees that determine substantial rights, because they depend more upon special facts, less upon fixed principles, and are less decisive of vested rights than final orders and decrees. Thus a decree of specific performance of a contract, Shubert v. Woodward, 167 Fed. 47, 54, 92 C. C. A. 509, 516, and an order postponing a hearing of a case for a few days rest alike in the discretion of the chancellor; but the former is governed by fixed and familiar rules and principles and is at once seen to be reviewable, while the varying facts and circumstances which condition the latter generally exempt it from established rules and leave it to the judgment of the court which will be reviewed only for a gross abuse of discretion. The order in this case is of the former class. The motion of the creditors was in reality an application to the court below to refuse the bankrupt a discharge on account of her lack of prosecution of her application for it. If that court had granted the motion, it would thereby have finally denied her application for her discharge, and she could have invoked a review by this court of that decision by an appeal under section 25a of the Bankruptcy Law. In re Kuffler, 127 Fed. 125, 61 C. C. A. 259; Matter of Semons, 72 C. C. A. 683, 140 Fed. 989, 15 Am. Bankr. Rep. 822. But its refusal to grant the motion was not more discretionary than its grant of it would have been. The controlling facts presented at the hearing of the motion were undisputed. They either gave the creditors the right under the principles and rules of equity jurisprudence to a dismissal of the application for the discharge, or they gave the bankrupt the right to a hearing upon them. The question to be decided was a question of law, reviewable by appeal under section 25a of the Bankruptcy Law if decided against the bankrupt

and by petition to revise under section 24b of that law if decided against the creditors. Returning therefore to the question at issue, did the court fall into an error in its interpretation or application of the principles and rules of equity jurisprudence to the facts of this case?

A proceeding in bankruptcy is a proceeding in equity. The bankrupt, after a neglect to file her petition for a discharge until more than 16 months after she was adjudged a bankrupt, and after a delay of more than 4 years and 4 months after she filed her application for a discharge, was for the first time praying the court to hear and grant it. It is an immemorial principle of equity jurisprudence that nothing but conscience, good faith, and reasonable diligence can call a court of equity into action. Smith v. Clay, 3 Brown's Chancery, 639; State of Iowa v. Carr, 191 Fed. 257, 270, 112 C. C. A. 477. "It has been frequently held," says the Supreme Court, "that the mere institution of a suit does not of itself relieve a person from the charge of laches, and that, if he fail in the diligent prosecution of the action, the consequences are the same as though no action had been begun." Johnston v. Standard Mining Co., 148 U. S. 360, 370, 13 Sup. Ct. 585, 589 (37 L. Ed. 480); Willard v. Wood, 164 U. S. 502, 505, 17 Sup. Ct. 176, 41 L. Ed. 531. Undoubtedly it was not the intention of the Supreme Court by this statement to hold or intimate that a complainant who had commenced a suit or proceeding would be guilty of the same degree of laches as one who had not done so. But it clearly was its purpose to declare that the institution of a legal proceeding would not relieve the actor from laches before or after its commencement.

Let us try the question in this case by these rules. Had the defendant in the autumn of 1911 exercised such reasonable diligence to obtain a hearing and decision upon her application for a discharge as ought to call a court of equity into activity on her behalf? She neglected to file her petition within the year limited by the bankruptcy law for its filing. That law provides that it may be filed within the next six months after the year only when "it shall be made to appear to the judge that the bankrupt was unavoidably prevented from filing it" within the year, section 14a. What was made to appear to the judge according to the record in hand, on which this court must decide this case, was that the petition was signed and in the hands of the bankrupt's attorney in June, 1906, that he was busy and at times absent from his office in the fall of 1906, and from January 1, 1907, until April 26, 1907, when he applied to the court to file it. There was, however, no showing that he was prevented by business or absence, or by any means whatever, from filing it in June, July, or August, 1906, or that either he or the bankrupt had been "unavoidably prevented" from filing it within the year. It was filed on April 26, 1907, and then for more than four years and four months the bankrupt and her attorney neglected to apply to the court or clerk to bring the application to a hearing, while witnesses who knew facts and circumstances that might have been material to issues that might be

raised by objections to the discharge forgot and scattered. The provisions of section 14 of the Bankruptcy Law that the application for a discharge shall be filed within one year after the adjudication, that if the bankrupt is unavoidably prevented from doing so it may be filed within the next six months, and that the judge shall hear the petition and the proofs in opposition to it at such time and place as will give parties in interest a reasonable opportunity to be heard, plainly indicate the purpose of Congress to secure an early hearing and disposition of the issues springing from such petitions. It is obvious that a wise and just administration of this law requires that such issues shall be framed and tried before the memory of the witnesses familiar with the transactions of the bankrupt at and shortly before the time of his adjudication has been dimmed by long delay and before they and the documentary evidence surrounding these transactions have been scattered or lost. The record in this case is so clear and compelling that the court is unable to resist the conclusion that the bankrupt failed to exercise that reasonable diligence in the prosecution of her claim for a discharge which is requisite to call a court of equity into action in her behalf.

The prayer of the petition to revise must therefore be granted, the order denying the motion of the petitioners to dismiss for want of prosecution the application of the bankrupt for her discharge must be set aside, and the court below must be directed to enter an order granting that motion, and it is so ordered.